STATE OF NORTH CAROLINA v. ROBERT L. CADY

No. 28

(Filed 8 May 1978)

DEFENDANT was charged in a bill of indictment, proper in form, with murder in the first degree. Upon conviction before *Judge Giles Clark,* 11 October 1976 Session, CUMBERLAND Superior Court, he was sentenced to life imprisonment.

The State's evidence tended to show the following:

The body of the deceased, Swindell Fletcher, was discovered about 3:15 p.m. on 26 May 1975 in the hallway of his home in Spring Lake, North Carolina. The body had twenty-five wounds and was cold and stiff. Blood was scattered about the living room

State v. Cady

and dark red stains were found around the front and rear doors. Death resulted from loss of blood due to wounds through the heart. The blood ethanol content of the body of the deceased was .13 breathalyzer units.

Lula Mae Fletcher, wife of the deceased, and defendant, Robert L. Cady, had been living together at the deceased's home while the deceased was in Oklahoma attending a United States Army school. The deceased had been stationed at Fort Bragg. Approximately ten days before the deceased returned to his home in Spring Lake, defendant moved out of the house. The deceased had been out of the State for some three months prior to his return in May 1975, during which time defendant and Lula Mae Fletcher had discussed the $20,000.00 Army insurance on the deceased and his 1974 Cutlass Supreme automobile. During these discussions defendant questioned whether the insurance money would go directly to Lula Mae Fletcher. Methods of killing the deceased were also discussed.

On Saturday, 24 May 1975, defendant saw Lula Mae Fletcher at a social club at Fort Bragg known as the "Mule Barn," which military personnel and their guests attended. At that time, Lula Mae Fletcher had a black eye and told defendant that the deceased had hit her. Defendant then said that he would kill him and sought transportation to the home of the deceased; however, he did not go at that time.

The next day, Sunday, 25 May 1975, Lula Mae Fletcher told defendant at the Mule Barn that she and the deceased had had an argument and that she and her children were going to spend the night at the home of a friend, Brenda Johnson. At 8:50 p.m. on that day, defendant left the Mule Barn. He was again seen outside the club between 11:00 and 11:30 p.m. The driving time from the Mule Barn to the deceased's home was approximately five minutes.

Defendant at some point had offered Albert Span $1,000.00 to kill Swindell Fletcher, but was turned down. On Sunday, 25 May 1975, at approximately 10:00 to 10:30 p.m., Span saw defendant in the latrine in the barracks at Fort Bragg. At that time, he observed blood on defendant's shirt and pants. Defendant told Span that he had been in a fight. Defendant then showered and dressed and went with Span to the Mule Barn.

The next morning during formation at 7:00 a.m., defendant stated to Span that the deceased had jumped on him and that he had taken care of the situation. Later in the day defendant told Span that the deceased had been killed and that he understood they were going to try to put it on him and he wanted Span to say that he was with him on the previous night.

Later Span saw defendant driving around the base and elsewhere in the 1974 Cutlass Supreme owned by the deceased and Span asked where he got it. Defendant replied, "when he bumped that Nigger off." Defendant also said that the car was going to be put in his name by the widow of the deceased.

Defendant offered evidence essentially of an alibi nature, including his own testimony. He detailed his activities on the dates and times in question and denied all the inculpatory statements allegedly made by him that had been offered by the State.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Daniel C. Oakley for the State.*

*E. Lynn Johnson for the defendant.*

PER CURIAM.

Defendant brings forward no assignments of error, merely requesting a review of the record to determine whether prejudicial error occurred in his trial and if so, whether he is entitled to a new trial.

We have reviewed the record in detail and find very few objections. Able defense counsel, with commendable frankness, has assigned no errors for the obvious reason that there were none. The case was well prepared and prosecuted by Assistant District Attorney Wade E. Byrd. An able trial judge, Giles Clark, presided. After a careful study of the record, we find that defendant has received a fair trial in which there was

No error.